Please step up, both of you. Identify yourselves for the record. May it please the court, Carrie Firebaugh on behalf of the appellant, Alfredo Ramos. Sally Dilkirk, DIO. Alright, 15 minutes per side, save time for your rebuttal if you have any. Before I begin, I just want to say I know that this argument was originally scheduled for last month, and I just wanted to thank the court for granting my emergency motion to reschedule it and for agreeing to that motion. I had a family emergency and I appreciate being able to present my argument today. That being said, I would like to address argument two in my brief, whether the court's remark to the jurors just prior to their deliberations denied Mr. Ramos his right to a fair trial. But if this court has any questions regarding the other issue I raised in the brief, I'd be happy to answer those as well. In this case, after hearing closing arguments and being orally instructed as to the law, the last instruction the jury received from the judge in this case for their deliberations was that they would have the instructions of law he had just recited to them and some exhibits in their possession. And if they thought it would be helpful to review and peruse them, they would be available. However, the judge then went on to state that whether the jurors did so or how they did so would be up to them. The judge's last remark went to the heart of Mr. Ramos' right to a trial by a fair and impartial jury because it conveyed the message to the jurors that they didn't have to follow their oath by reviewing the written instructions on the law and applying the law in those instructions to the facts in order to reach their verdict. How did it do that? By stating to the juries that it was up to them whether or not they reviewed the law and exhibits during their deliberations in this case. So essentially the court told the jury they could do whatever they want with the law and the evidence when they went back to deliberate. This last remark by the court is especially significant not only because the jurors were previously told by the judge they didn't have to pay close attention when they orally instructed them as to the law, but also because this was the last instruction that the jury received from the court before beginning their deliberations. As the Illinois Supreme Court noted in People v. Sprinkle, and I quote, Here, because the last instruction the jury heard in this case suggested that it would be fine if they chose not to take their responsibilities as jurors seriously by applying the facts of the law, it cannot be concluded that Mr. Ramos received a trial by a fair and impartial jury. If the court doesn't have any further questions, I'll reserve some time for rebuttal. Questions? Well, the court's statement basically says that whether or not they look at the document and review them, well, whether they peruse the law in their deliberations is up to them. It doesn't mean that they disregard the instructions, does it? Actually, what the court says is, the court did say whether they reviewed the law or the exhibits, and the evidence in this case, was up to them. And that essentially told them that they didn't have to consider it very carefully in reaching their verdict. Well, you're familiar with the fact that the jury received a full packet of instructions, correct? Yes. The written instructions? They received the written instructions. Well, I can't recall anything in the packet of instructions that we routinely give that tells them they have to look at the instructions and they have to look at the exhibits. Can you enlighten me on that, as to whether there's something in the opening instruction? What is it, 1.01? Any of the instructions say you must look at the instructions, you must review the exhibits? Well, the jury is sworn to hear and consider all the evidence in the case. And that includes applying the facts that they hear during the trial to the written instructions or the law that they either hear orally from the judge or they get in writing during their deliberation. Well, you just said that. They would have heard all the instructions from the judge, his emphasizing certain portions, as you're saying. But here, he would have said them all. So I've sat on several juries, and I honestly can tell you, I sat in the corner and said, you people make your mind up. I can tell you, in most cases, none of them looked at those documents. Well, in this case, it's particularly significant that, I mean, although the jury was orally instructed as to the law, the court basically told them they didn't have to pay that close attention because they were going to get them in writing during their deliberation. Well, maybe they paid close attention to his giving them. It's possible that the jurors heard the oral instructions. But the fact of the matter is that the last instruction the judge gave them before their deliberations was that it was up to them whether they took the responsibility of the jurors seriously by applying. It's carefully considering the evidence and applying that to the law in order to be sure. Well, he's already told them that in the opening instruction, as I recall how it goes. Members of the jury, you've received the evidence and arguments in the case. I'm now going to instruct you on the law. The law is stated in these instructions. You must follow all of them. In the closing arguments. A lot of the facts, and in this way, decide the case. General opening instruction, which tells them what they're supposed to do. In both sides, in their closing arguments, would have stated the same. You will hear from the judge now, blah, blah, blah. Again, in this case, the judge basically told the jury they didn't have to listen to him. I don't see where he told them that. He told them they didn't have to review the written instructions. He said, I'm going to give you the instructions. I've recited them to you. If you want to review them, you can. Whether you do so or how you do so is up to you. So what he's saying is, I've read what you're supposed to do. Now, here's what I read to you. You can look at that if you want to or not look at it if you don't want to. Isn't it kind of laboring the obvious that you have the instructions, you have the exhibits, they're available for you. You're not going to expect them to say, I command you to read the instructions, to look at all of the exhibits. That's not the province of the judge to tell the jury that. They're there for the jury to consider. Everybody knows that. In this case, the judge didn't have to say anything further after orally instructing. But he chose to say, in this case, that it was up to them whether or not that they reviewed the law and the evidence in this case and reaching their verdict. And that was the last thing that they heard. That may be so. He didn't have to say these things. I wouldn't have said them. Judge Smith might not have said them, nor Judge House. Here we have a fairly loquacious judge. He felt like saying a few more things. But I'm just wondering what it was that was so terrible about what he said or how that really prejudiced your client. Well, basically, as I have said before, the statements gave the jury the impression that they didn't have to. It was up to them whether or not they carefully considered the evidence in this case and followed their responsibility. I think that the influence of the court's comments is most evidenced by the fact that the jury reached a verdict very quickly in this case. And that's even considering the fact that this was a complicated trial with multiple witnesses, a complex fact pattern, and it took place over a couple of days. Even for the jury to review all the evidence presented, read through the written instructions as they are supposed to, and consider all of that in addition to electing a foreperson, taking a vote, it should have taken longer than that in this case. Why should it have taken longer? What kind of time frame do you put on the deliberations of a jury? Could it be that the strength of the evidence had just as much impact as Judge Lynn's comment? Like I initially said, I think that it can't – the comment that the judge made can't simply be negated by saying that there was, you know, overwhelming evidence in this case. Again, they had to take the time to carefully review the evidence. If they didn't listen to his last statement, apply that evidence to the law, you know, amongst the other things that jurors have to do to take up time when they go back to deliberate in a case. And it seems that with a case such as this, where there was a lot of evidence to consider, multiple witnesses, and it wasn't a clear-cut case, a fact pattern, it would – this would suggest that the court's comments influenced them. How long did the jury take? What was the time frame? They went out at 6.42 p.m. and came back at 7.47. So just slightly over an hour. Let me ask you this. On your first point dealing with the prosecutor's argument, I believe during the opening phase of closing argument, where the state's attorney made a comment about sometimes criminals work together. Right. You seem to have found that very objectionable. What was the basis of that? The reference to Mr. Ramos and his co-defendant as criminals was improper, first, because it was not based on any of the evidence presented at trial. There was no evidence as to his prior criminal history. And second – Well, wasn't there an accountability instruction given? Wasn't that the theory here? Right. There wasn't – this was an – there was an accountability instruction. Doesn't the accountability instruction actually use the reference to criminals, criminal acts? Actually, I think as the state also pointed out in its brief, the instruction itself refers to person or defendant rather than criminal. So even using those words instead of referring to Mr. Ramos and his co-defendant as a criminal in this case would have been much less prejudicial. You run the risk of having the jury not base its decision on the evidence presented at trial but on Mr. Ramos' propensity to commit crime. And this is, again, especially significant and improper in this case because there was no evidence that Mr. Ramos had committed a prior crime. Any other questions? No. Okay. Thank you. Good morning. Morning. Defendant now claims to play an error because Judge Lynn told the jurors that they would have the exhibits and copies of the written instructions with them in the jury room. He said that whether and how they used them was up to them. I submit to you the remark did not inform the jurors that the state's burden of proof is but a minor detail, as defendant now claims. Here, as I see it, is the basic problem with defendant's argument. The judge told the jurors whether or how you view the exhibits is up to you. He never said whether or how you deliver it is up to you. The judge was specifically referring to inspection of the physical exhibits and written copies of the jury instructions, not to the jury's general duty to deliberate and reach a verdict. I think, Justice Tumen, you were alluding to a point that I found important as well. There's no law that says that jurors have to personally inspect a physical exhibit during their deliberations. As the judge said, it was up to them if they wanted to handle the .38 caliber gun that the defendant used to shoot his victims. Nor did the judge's remarks hasten the verdict. The judge specifically told the jurors that there were no time limits. He told them to take whatever time was necessary for the deliberations. He didn't say this once. He said it three times on page 304 of the record. The jury convicted the defendant in an hour and five minutes because the state's case included a confession, eyewitness testimony, line-up identifications, and recovery of the murder weapon. The judge certainly did not diminish the state's burden of proof, especially in light of defense counsel's own heated argument with respect to the state's burden. And if I can quote two sentences from Mr. Strunk, a very experienced criminal defense attorney, he really hammered the point home for the jury when he said, Mr. Ramos doesn't have to present any evidence. Mr. Ramos doesn't have to testify. He doesn't have to tell you where he was five or six years ago. He does not have to get on that stand. They, the state, have to prove him guilty with their witnesses. The judge correctly instructed the jury on the reasonable doubt standard of proof, and he told the jurors that nothing he said could be construed as his own personal opinion. I don't think that there was any error here, much less plain error. In this appeal, for all of the arguments, the defendant has the burden of showing plain error, and he cannot do so because he cannot show that the evidence was so closely balanced that an innocent man might have been convicted. The evidence included two eyewitnesses who testified at trial and described the murders and who made four unequivocal identifications of the defendant, two during lineups and two open court. One of the witnesses positively identified the co-defendant as well. There was physical evidence that corroborated the eyewitness accounts, the dollar bill, the page number, the phone records, et cetera, and there was the confession, probably the pivotal piece of evidence in this case because the defendant gave a complete confession in which he directed the police to the location and eventual recovery of the murder weapon. There wasn't any contrary evidence because the defendant chose not to testify or present witnesses, which was his right, but I submit to you it's not a weak or a borderline case. And for that reason, I also wanted to discuss the second point of plain error and the comment about criminals working together because if the defendant has prevailed with the challenge to the prosecutor's closing argument, he can only do so by showing the comment denied of a fair trial and threaten the integrity of the judicial process. Again, when discussing the law of accountability, the prosecutor in the first closing argument said, the law recognizes that criminals sometimes work together. The defendant now argues that this remark inflamed the passions of the jurors, but I respectfully disagree. The word was not emotionally laden or particularly likely to evoke visceral response. And as part of my authority, I would refer you to the people's case cited in Murray Blue cited by my opponent in which the prosecutor called the defendant a predator during a closing argument, and the court held that an instruction that arguments are not evidence would be sufficient to cure any resulting prejudice. Also, the remark was not directed at the defendant personally. It was a generic reference made during an entirely proper closing argument in which the prosecutor read and explained the accountability instructions for the jurors. The generic nature of the remark is underscored by the prosecutor's reference to what the law in general recognizes. The prosecutor was talking about what the law recognizes, not his own personal opinion. The defendant also argues that this remark necessarily implied he had a criminal record, but again, I would disagree because the prosecutor never mentioned any criminal record and never even alluded to one. Very simply, I submit to you that the jurors, a sensible people, understood that this was a criminal prosecution,  for the crimes he had committed in this case, thereby making him a criminal. There wasn't any error here, much less a breakdown in the adversarial process, and the defendant could not sustain this burden of showing plain error. With that, I would ask you to affirm the judgment of conviction and sentence entered in the court of law. Thank you very much. Thank you. Unless the court has any further questions, I don't have anything to present in rebuttal. All right. Thank you. I would just ask that the court respectfully request that the court reverse Ms. Ramos' conviction and remand this case for neutral. The matter will be taken under advisement. Thank you very much.